IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ELECTRICAL MEDICAL TRUST et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:23-cv-04398 |
| § | |
| U.S. ANESTHESIA PARTNERS, INC., et al., § | |
| § | |
| Defendants. § | |

**REPLY IN SUPPORT OF THE WELSH CARSON ENTITIES' MOTION TO DISMISS**

Plaintiffs' Opposition confirms that the Complaint states no viable claim against any Welsh Carson entity. Indeed, it doubles down on Plaintiffs' improper conflation of USAP with the Welsh Carson entities, seeking to impose liability for a decade-old initial investment and long-ago acquisitions by USAP. Plaintiffs' stale and defective pleading compels dismissal.

*First*, all of Plaintiffs' claims against the Welsh Carson entities are barred by the statute of limitations. As the Opposition concedes, the Complaint alleges only two USAP acquisitions (in 2019 and 2020) that fall within the limitations period, and it fails to allege any independent wrongful conduct by minority investor Welsh Carson as to either. The Opposition argues a Welsh Carson entity entered a conspiracy with USAP's predecessor in 2012 and suggests the two USAP acquisitions are part of that conspiracy. But the Complaint alleges no such conspiracy, and there is no predecessor. Regardless, the same precedent that makes the Welsh Carson entities incapable of conspiring with USAP makes them incapable of conspiring with any USAP predecessor. Moreover, any "original conspiracy" necessarily ended in 2017 when Welsh Carson Fund XI wholly divested its ownership of USAP. Plaintiffs' "single enterprise" theory also fails to avoid the limitations bar, as "general" participation in an anticompetitive scheme does not suffice.

*Second*, the Opposition also confirms that the Complaint fails to state any viable antitrust claim against any Welsh Carson entity in connection with any of the allegedly illegal acquisitions or conduct. Plaintiffs' "single enterprise" theory not only misapplies antitrust case law and principles, but also violates the well-settled corporate law principle that a parent entity is not liable for its subsidiary's misconduct unless the parent *independently* participates in that misconduct.

## I. PLAINTIFFS' CLAIMS ARE TIME-BARRED.

The Complaint fails to allege conduct by any Welsh Carson entity relating to any challenged acquisitions or alleged agreement-based violations within the four-year limitations period. Br. 5–11. The Opposition concedes that, at most, two USAP acquisitions (in 2019 and 2020) occurred within the limitations period. Opp. 43. It also all but concedes that the Complaint alleges no conduct whatsoever by a Welsh Carson entity in connection with these two acquisitions. Br. 14–17; Opp. 42–44. Instead, Plaintiffs now argue that they may pursue long-stale claims against the Welsh Carson entities because Welsh Carson is either (i) part of a continuing conspiracy entered into in 2012 from which it never withdrew or (ii) part of a "single enterprise" with USAP. Opp. 43–44. Both theories fail.

*Continuing conspiracy*. The Opposition newly asserts the existence of an unpled "original conspiracy" among the Welsh Carson entities, John Rizzo, New Day, and GHA that purportedly began in 2012 and continues through the present day. Opp. 44. But this supposed "original conspiracy" is not pled in the Complaint, *see* Compl. ¶¶ 160–66, and "it is axiomatic that a complaint cannot be amended by briefs in opposition," *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011).

Even were it properly pled, the "original conspirators" were not separate economic actors pursuing separate economic interests, so *Copperweld* still bars the conspiracy claim. *See Copperweld Corp. v. Indep. Tube*, 467 U.S. 752, 768–71 (1984). Plaintiffs' assertion to the

2

Case 4:23-cv-04398   Document 71   Filed on 03/26/24 in TXSD   Page 3 of 11

contrary is conclusory and contradicted by their own allegations: New Day is merely USAP's original name, not a predecessor entity, Compl. ¶¶ 55–56;[1] John Rizzo acted on behalf of New Day, *id.* ¶¶ 48, 52; and New Day acquired GHA, *id.* ¶ 55. Plaintiffs' "original conspiracy" simply replaces USAP with the same entity using its old name, its agent, and a company it acquired. This does not establish a separate conspiracy from the one alleged among USAP and the Welsh Carson entities. *See Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952) ("A corporation cannot conspire with itself any more than a private individual can, and … the acts of the agent are the acts of the corporation."). This unpled "original conspiracy" theory thus fails for the same reasons as the conspiracy that Plaintiffs actually pled. *See Copperweld*, 467 U.S. at 768–71 (parent and subsidiary cannot conspire as a matter of antitrust law).

Moreover, any supposed "original conspiracy" ended well before the limitations period. Plaintiffs do not allege this "original conspiracy" in the Complaint,[2] and only vaguely describe it in their Opposition. In any event, the Welsh Carson entity that supposedly conspired (Fund XI) sold its entire USAP stake in 2017. Courts have routinely held that divestment from a business constitutes withdrawal from an antitrust conspiracy. *See, e.g.*, *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) (sale of dairy "totally severed [defendant's] ties to the milk price-fixing conspiracy"); *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2021 WL 409982, at *5–6 (E.D. Pa. Feb. 5, 2021) (resignation from business cooperative shows withdrawal). Plaintiffs conflate distinct Welsh Carson entities to obscure the undisputed fact that

---

[1] *Compare* Delaware Department of State: Division of Corporations, File No. 5197466, U.S. Anesthesia Partners, Inc. (showing date of incorporation as 8/13/2012) *with FTC v. USAP, et al.*, 4:23-cv-03560, Dkt. 1 ("F.T.C. Compl.") ¶ 86 (alleging New Day was incorporated on 8/13/2012). *See Hack v. Wright*, 396 F. Supp. 3d 720, 736 & n.11 (S.D. Tex. 2019) (court may take judicial notice of certificate of incorporation in deciding motion to dismiss).

[2] Notably, the Complaint alleges *no* conduct by John Rizzo after 2013. Compl. ¶¶ 69–82.

Fund XI—the sole Welsh Carson entity that initially invested in USAP—sold its stake in 2017, and a different Welsh Carson entity subsequently acquired, and never held more than, a minority interest. *See* Compl. ¶ 19; F.T.C. Compl. ¶ 28. The Complaint does not allege that the Welsh Carson entity that acquired a minority interest in 2017 ever participated in the alleged conspiracy— nor that any Welsh Carson entity except Fund XI ever had any involvement in USAP's acquisitions and agreements. Compl. ¶¶ 55–82. Thus, even if the Complaint had alleged Fund XI were part of some original conspiracy, the sale of its interest in 2017 constitutes withdrawal. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 8669891, at \*8, \*13 (N.D. Cal. Aug. 22, 2016) (sale of stake in allegedly conspiring businesses established withdrawal, even where related entities retained 25% stake). The cases Plaintiffs cite do not compel a different result. *See* Opp. 44.

***Single enterprise.*** Plaintiffs concede that, even under their single enterprise theory, they must plead each Welsh Carson entity's independent participation. Opp. 36–40. But there are no allegations establishing such conduct for any Welsh Carson entity within the limitations period (on or after September 21, 2019)—indeed, Plaintiffs concede that the Welsh Carson entities "did not actively participate" in any supposed antitrust violations during that period. Opp. 44. Plaintiffs resort to arguing that "Welsh Carson need only participate in the anticompetitive scheme generally." *Id.* But "general" participation, absent independent conduct, fails to meet Plaintiffs' burden. *See In re Penn. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) (no independent participation where parent owned and controlled subsidiaries and gave "assent and approval to [their] conduct"). Contrary to the Opposition's contention, it *does* "matter"—it is, in fact, dispositive—that the Welsh Carson entities "did not actively participate" in any purported violation in the limitations period. Opp. 44; Compl. ¶ 19. Plaintiffs' authority does not suggest otherwise. Plaintiffs' claims therefore must be dismissed as time-barred.

## II. THE OPPOSITION CANNOT REMEDY PLAINTIFFS' FAILURE TO ALLEGE AN ANTITRUST VIOLATION BY ANY WELSH CARSON ENTITY.

### A. The Opposition Fails to Justify the Complaint's Improper Group Pleading.

Plaintiffs do not dispute (and thus concede) that the defendants are separate entities that cannot be conflated. But the Complaint improperly conflates them, making undifferentiated references to "Welsh Carson's" conduct. The Opposition attempts to avoid dismissal by asserting that *all* the Welsh Carson entities are jointly and severally liable as a "common enterprise." Opp. 31–32. But Plaintiffs' cited authority is inapt: it relates to deceptive trade practices and not antitrust violations, and it emanates from the FTC Act's Section 5, under which there is no private right of action. *See F.T.C. v. Kennedy*, 574 F. Supp. 2d 714, 715–16 (S.D. Tex. 2008) (Section 5(a) claim brought under FTC's Section 13(b) authority); *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014) (same); *see also Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 603 (1926) (no private right of action under Section 5). The Opposition cites no authority allowing private plaintiffs to evade Rule 8 merely by asserting a "common enterprise." Instead, Plaintiffs must (but do not) allege *facts* showing each Welsh Carson entity *independently* violated the antitrust laws. *See Chandler v. Phoenix Servs.*, 2020 WL 1848047, at *14 (N.D. Tex. Apr. 13, 2020), *aff'd*, 45 F.4th 807 (5th Cir. 2022) (must plead "each defendant independently participated" in scheme).

### B. Plaintiffs' Single Enterprise Theory Misreads *Copperweld*.

Recognizing that their conspiracy claim is squarely foreclosed by *Copperweld*, Plaintiffs misapply dicta in that decision to claim that entities unable to conspire are nonetheless jointly liable as a "single enterprise." Opp. 24–25. Yet *Copperweld* says no such thing: it merely noted that its holding did not leave a gap in the antitrust laws because other statutes remained available to "police[] adequately" anticompetitive conduct. 467 U.S. at 777. The Motion established that a subsidiary is not liable for the actions of its parent or sister "simply by dint of the corporate

5

relationship." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010). The Opposition fails to meaningfully engage with this proposition.

And although the Opposition contends otherwise, Opp. 28, this issue is appropriately resolved on this Motion based on clear pleading defects. *See Top Rank v. Haymon*, 2015 WL 9948936, at *16 (C.D. Cal. Oct. 16, 2015) (granting motion to dismiss under *Copperweld*; "[a]s pled," defendant investment firms both "share[d] a complete unity of economic interest in the venture's success" and were "not actual or potential competitors" of investee defendants).

### C. The Opposition Points to No Independent Conduct Supporting Liability of the Welsh Carson Entities.

The Opposition concedes that even under a single enterprise theory, independent conduct is required. Opp. 33. None of the conclusory and irrelevant allegations outlined in the Opposition suffices to allege such conduct by the Welsh Carson entities.[3]

***Alleged Conduct Incidental to the Welsh Carson Entities' Investments.*** The Opposition first claims that Plaintiffs have pled the Welsh Carson entities' independent participation through allegations that they "controlled" and "directed" USAP. Opp. 37. These allegations fail as a matter of law. *See In re Penn. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 688 (no independent participation where parent "had ownership and control" of subsidiaries); *Invamed, Inc. v. Barr Lab'ys, Inc.*, 22 F. Supp. 2d 210, 218–19 (S.D.N.Y. 1998) ("ownership and control" of subsidiary did not suffice). Nor is independent participation shown by alleged due diligence and financing support. *See* Br. 20. Plaintiffs dismiss the Motion's authorities as involving "mere acquiescence" or no independent conduct, Opp. 40, but identify no allegations of any conduct other than conduct

---

[3] Plaintiffs' claim that the Motion supposedly admitted that the Welsh Carson entities "qualif[y] as a 'single enterprise' with USAP 'at all times,'" is irrelevant and, in any event, false: the Motion states only that the Complaint shows "*aligned economic interests . . .* at all times." Opp. 44.

6

typical of an investor in a portfolio company or a parent to its subsidiary.

***Alleged Conduct of USAP Director.*** The Opposition claims that the Welsh Carson entities independently participated through a designee to USAP's board, Brian Regan, but Plaintiffs fail to overcome the presumption that he acted on USAP's behalf. *See U.S. v. Bestfoods*, 524 U.S. 51, 69–70 (1998). The presumption is "strongest when the act is perfectly consistent with the norms of corporate behavior, but wanes [when] … plainly contrary to the interests of the subsidiary yet nonetheless advantageous to the parent." *Id.* at 70 n.13. Plaintiffs' failure to cite any facts to overcome the presumption is plainly a basis for dismissal at this stage. *See In re Alper Hldgs. USA*, 398 B.R. 736, 754 (S.D.N.Y. 2008) (granting dismissal where allegations were "legally insufficient to overcome the *Bestfoods* presumption"); Opp. 39.

Plaintiffs cite no acts by the dual-hatted director that were contrary to USAP's interest yet advantageous to any Welsh Carson entity. The Opposition instead relies on his role in USAP's formation and strategy in 2012 and 2013, Opp. 38–39; these decade-old allegations are fully consistent with director conduct and fall well within corporate norms. The Opposition claims the *Bestfoods* presumption is rebutted because he "[held] himself out as acting for the parent" while "also work[ing] with the parent's own employees to assist in the misconduct." Opp. 39. But the sole basis for that irrelevant claim is the allegation that he signed a 2013 letter of intent on behalf of a Welsh Carson entity as a partial financing source for a USAP transaction. Compl. ¶ 66. That allegation is far from the conduct in Plaintiffs' cited cases, and not "contrary" to the interests of USAP; instead, it directly supported those interests. *Cf. In re Packaged Seafood Antitrust Litig.*, 2022 WL 836951, at *3, *10 (S.D. Cal. Mar. 21, 2022) (dual agent assured portfolio company's co-conspirators "on an 'owner to owner' basis" that investor would "support and enforce the collusive pricing agreements"); *Financialapps, LLC v. Envestnet, Inc.*, 2023 WL 4975373, at *11

7

(D. Del. July 31, 2023) (dual agents worked with parent CEO and personnel, using parent email addresses, to develop product based on misappropriated technology).

*Alleged Conduct of Welsh Carson Employees.* The Opposition's claim that other Welsh Carson employees performed services related to USAP, Opp. 39–40, is similarly irrelevant. To the extent that such work was performed pursuant to ordinary course agreements with USAP, such advisory services were unquestionably performed on behalf of USAP. Plaintiffs point to other supposed work by "Welsh Carson employees," but concede that those employees were acting in a supporting role to USAP and Mr. Regan as he fulfilled his fiduciary duties to USAP. Opp. 39 (Regan "work[ed] with [Welsh Carson's] own employees"). The conventional support offered by these employees is attributable to the director and therefore entitled to the same presumption that it was performed on USAP's behalf. *See Hyde Park Venture Partners Fund III, L.P. v. FairXchange, LLC*, 292 A.3d 178, 196 (Del. Ch. 2023) (designated director had "the right to share information with the [designating entity], and he necessarily shared information in light of his dual roles"); *State ex rel. Dixon v. Mo.-Kan. Pipe Line Co.*, 36 A.2d 29, 32 (Del. Super. Ct. 1944) (directors may rely on agents in carrying out duties; it "is merely the employment of assistance in acquiring the information requisite in one in a position of trust and responsibility").

In sum, none of the Opposition's arguments overcome Plaintiffs' failure to allege facts showing independent conduct. All their cited cases involved substantial alleged independent conduct. *See, e.g.*, *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1071 (D. Colo. 2004) (parent "coerce[d]" artists to use subsidiaries' services or "risk losing airplay" on subsidiary radio stations); *F.T.C. v. Syngenta*, 2024 WL 149552, at *24 (M.D.N.C. Jan. 12, 2024) (parent entities signed allegedly unlawful agreement and managed relationship with alleged co-conspirator).

  **D.**   **Plaintiffs Fail to Plausibly Allege Claims Against the Welsh Carson Entities.**

  The Opposition also fails to address multiple pleading defects specific to the Welsh Carson entities.

  ***First,*** the Opposition confirms the Complaint alleged no Section 1 violation against any Welsh Carson entity. The Opposition identifies no overt acts *by the Welsh Carson entities* supporting a Section 1 violation. Plaintiffs contend these so-called price-fixing agreements "grew from" Welsh Carson's supposed original conspiracy, Opp. 48, but they point to no allegations that a Welsh Carson entity ever participated in USAP's billing service agreements. Instead, they merely assert the conclusory claim that "Welsh Carson must have been 'aware'" of the agreements. *Id.* But conclusory claims of mere awareness are insufficient. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008) (parent's knowledge that subsidiary agreed with competitor to restrain competition did not show parent was co-conspirator). Plaintiffs also fail to allege any independent act by a Welsh Carson entity constituting exclusionary conduct, a necessary element of a Section 2 claim. *See* Br. 13.

  ***Second,*** Plaintiffs claim that the Welsh Carson entities are liable under Section 7 for "indirect acquisitions" of practices acquired by USAP. Opp. 45. But Section 7's "indirectly" language cannot be stretched to hold an investor generally liable for anticompetitive acquisitions by a company in which it invests. By barring "indirect[]" stock acquisitions, Congress targeted acquisitions by "holding companies" or other vehicles that would allow them to amass market power by acquiring and operating competing companies without merging or integrating them. *See* H.R. Rep. No. 63-627, at 17 (1914) (Section 7 concerns "the 'holding company,' which is . . . a company whose primary purpose is to hold stocks of other companies"); 51 Cong. Rec. 14312, 14313 (1914) (language targets holding companies); *see also Brown Shoe Co. v. U.S.*, 370 U.S. 294, 313–14 (1962) (Clayton Act was "directed primarily at the development of holding

9

companies and at the *secret acquisition of competitors* through the purchase of all or parts of such competitors' stock"); *U.S. v. Celanese Corp.*, 91 F. Supp. 14, 17 (S.D.N.Y. 1950) (same).

There is no merit to Plaintiffs' claim that the Supreme Court's decision in *U.S. v. Philadelphia National Bank* marked some form of sea change in interpreting Section 7, Opp. 46, as that case involved a *direct* acquisition and the interaction between Section 7 and the Bank Merger Act. 374 U.S. 321, 331–34 (1963). It neither disturbed *Brown Shoe* and *Celanese* nor announced any new standard. No Welsh Carson entity has common ownership or control of separate, ostensibly competing entities. Plaintiffs allege USAP directly acquired each competing practice, and there is no suggestion that any Welsh Carson entity invested in any other entity competing with USAP.

**Third**, the Opposition fails to address (and therefore concedes) that Plaintiffs' demands for restitution and the disgorgement of profits should be dismissed. Br. 23–24.

## CONCLUSION

All claims against the Welsh Carson entities should be dismissed with prejudice.

Dated: March 26, 2024

Respectfully submitted,

By: */s/ R. Paul Yetter*

David B. Hennes (*pro hac vice*)
Jane E. Willis (*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
Phone: 212-596-9000; Fax: 212-596-9090

Kathryn Caldwell (*pro hac vice*)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts 02199
Phone: 617-951-7000; Fax: 617-951-7050

R. Paul Yetter
State Bar No. 22154200
S.D. Tex. No. 3639
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
713-632-8000
713-632-8002
pyetter@yettercoleman.com

*Counsel for the Welsh Carson Entities*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that, on March 26, 2024, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

                                    */s/ R. Paul Yetter*
                                    R. Paul Yetter